UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
FRANK BIELE, individually and derivatively on behalf
of the AT&T Pension Plan,

                    Plaintiff,

      -against-                                **COMPLAINT**

AT&T PENSION PLAN, AT&T MANAGEMENT         **07 Civ. 588 (VM)**
PENSION PLAN, AT&T CORP. as Administrator of
the AT&T Pension Plan and the AT&T Management        **ECF CASE**
Pension Plan, AT&T EMPLOYEES' BENEFIT
COMMITTEE of the AT&T Pension Plan and the
AT&T Management Pension Plan and
DANIEL P. FELDMAN,

                    Defendants.
-----------------------------------------------------------------------x

## I.      PRELIMINARY STATEMENT

1.      This is an action by plaintiff, Frank Biele, (1) seeking reinstatement of full

retroactive and prospective pension benefits from the defendant AT&T Pension Plan which is an

employee benefit plan within the meaning of the Employee Retirement Income Security Act of

1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq*., (2) for payment of all previously

withheld benefits with appropriate interest; (3) for interest on impermissibly withheld benefits

from the defendant AT&T Management Pension Plan, also an ERISA employee benefit plan;

and (4) damages from the other defendants for breaches of fiduciary duty which injured the

defendant AT&T Pension Plan.

## II.      JURISDICTION AND VENUE

2.      This action is brought pursuant to ERISA §§ 502(a)(1)(B), (a)(2), and (a)(3), 29

U.S.C. §§ 1132(a)(1)(B), (a)(2), and (a)(3).  This Court has subject matter jurisdiction pursuant

to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1). This Court has supplemental jurisdiction over

any other claim pursuant to 28 U.S.C. § 1367(a).

3.      Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202

and Rules 58 and 65 of the Federal Rules of Civil Procedure.

### III.    PARTIES

4.      Plaintiff Frank Biele ("Plaintiff") is a natural person who resides in Westchester

County, state of New York.

5.      Defendant AT&T Pension Plan (the "Plan") is, and at all times relevant hereto

was, an employee benefit plan within the meaning of ERISA § 3(3), 29 U.S.C. § 1002(3), an

employee pension benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2), and a

defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). The Plan

covers non-managerial employees of defendant AT&T Corp.

6.      Defendant AT&T Management Pension Plan (the "Management Plan") is, and at

all times relevant hereto was, an employee benefit plan within the meaning of ERISA § 3(3), 29

U.S.C. § 1002(3), an employee pension benefit plan within the meaning of ERISA § 3(2), 29

U.S.C. § 1002(2), and a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. §

1002(35). The Management Plan covers managerial employees of defendant AT&T Corp.

(The Plan and the Management Plan are sometimes referred to herein collectively as the

"Plans.")

7.      Defendant AT&T Corp.("AT&T") is the sponsor of the Plans within the meaning

of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B), the Administrator of the Plans within the

meaning of ERISA § (3)(16)(A), 29 U.S.C. § 1002(16)(A), and a fiduciary of the Plans within

the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

2

8.    Defendant AT&T Employee Benefits Committee of the AT&T Pension Plan and the AT&T Management Pension Plan (the "Committee") is the entity with authority to determine benefit claims under the Plans and to interpret the Plans and as such is a fiduciary of the Plans within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

9.    Defendant Daniel P. Feldman ("Feldman") is a natural person and is the individual to whom, upon information and belief, the Committee has delegated authority to make initial determinations of benefit claims for both the Plan and the Management Plan.

## IV.    FACTS

10.    Plaintiff retired from employment with AT&T Corp. on August 15, 1990. Effective August 16, 1990, Plaintiff began receiving his monthly pension benefits from the Plan. At all times relevant hereto Plaintiff has been and is a participant in each of the Plans within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

11.    After retiring from AT&T, Plaintiff worked for several employers and ultimately began working for the International Business Machines Corporation ("IBM") in 1995.

12.    In late 1998, AT&T announced that it was acquiring the IBM division for which Plaintiff worked.

13.    Plaintiff had the option of becoming a managerial employee of AT&T, in which case he would be a participant in the Management Plan, or working as an independent contractor, in which case he would not be a participant in the Management Plan.

14.    Upon learning of the impending acquisition of his IBM division, Plaintiff made repeated telephone calls to AT&T's Pension Service Center and to AT&T's Human Resources Department to inquire as to what affect, if any, reemployment would have on his continued

receipt of pension benefits from the Plan.  Plaintiff knew that becoming an independent

contractor would not affect his benefits.

15.     Each time Plaintiff inquired as to the effect of reemployment on his pension

benefits, he was informed either that no decision had been made or that the person to whom he

was speaking did not know.

16.     By letter dated April 26, 1999, five (5) days before the effective date of AT&T's

acquisition of Plaintiff's IBM division, AT&T informed Plaintiff that his pension benefits would

be suspended if he were reemployed by AT&T.  However, Plaintiff was aware that the

employees of TCG, another company recently acquired by AT&T, were being permitted to retain

their pension benefits from the Plan while reemployed by AT&T.

17.     If Plaintiff chose to work as an independent contractor, he would not have been

eligible for participation in the Management Plan or for other employee benefits such as

disability benefits.

18.     *Inter alia* because of the apparent inconsistent treatment of former IBM

employees and former TCG employees, and because Plaintiff had the option to change his status

from employee to independent contractor at any time, he opted to become an employee and

challenge the suspension of his pension benefits pursuant to the Plan's claims procedures.

19.     Shortly after May 1, 1999, Plaintiff sent a letter pursuant to the Plan's claims

procedures claiming the suspension of his benefits was improper.

20.     Plaintiff never received either an oral or a written response to his letter.  However,

shortly thereafter, and well within the 90 days permitted for a response to a claim, Plaintiff's

pension benefits were reinstated.

21.    Plaintiff continued to receive his pension benefits throughout the period of his reemployment.

22.    In July 2003, Plaintiff again retired from AT&T.  At that time, in addition to his benefits from the Plan, Plaintiff was entitled to a lump sum distribution from the Management Plan in the amount of $30,339.86.

23.    Plaintiff did not receive his August 2003 pension check from the Plan.  He therefore contacted AT&T's Pension Service Center.  After several attempts to determine the status of his Plan benefits, Plaintiff was informed that his pension payments had been suspended because of a purported overpayment.  Moreover, Plaintiff was not paid his lump sum from the Management Plan.

24.    By letter dated March 17, 2004 from Feldman, Plaintiff was informed that the payment of his pension benefits during his period of reemployment was in error and that he owed $82,503.21 for the purported overpayment.  That amount was said to include interest at "120% of the federal midterm interest rate[.]"

25.    That letter further stated that because Plaintiff's benefits should have been suspended from July 1, 1999 through July, 2003 but were not, no pension benefits had been paid since July 2003.  Rather, Plaintiff's monthly benefit payments since July 2003 had been applied toward the overpayments.

26.    The letter further asserted that "[a]lthough AT&T could continue the suspension of pension benefits until such time that the overpayment is resolved, we recognize the financial burden that may present for you."

27.    The letter then offered Plaintiff two options for repayment.  It further stated that Plaintiff had to select one of the options in writing or his full benefits would remain suspended.

5

28.    Under Option #1, the overpayment was to be reduced by the payments that had not been made since July 2003 and by the balance accrued in Plaintiff's Management Plan cash balance account.  The remainder of $38,834.78 would then be converted to an annuity of $314.66 per month to be deducted from Plaintiff's monthly benefits in perpetuity.

29.    Under Option #2, the overpayment was to be reduced by the annuity payments that had not been made since July 2003 and the entire remaining balance would then be converted to an annuity of $560.48 per month to be deducted from Plaintiff's monthly benefits in perpetuity.  However, Plaintiff would receive his lump sum benefit from the Management Plan.

30.    Seeing no alternative, Plaintiff elected Option # 2.

31.    The March 17, 2004 letter from Feldman failed to inform Plaintiff of his rights to dispute (1) the overpayment, (2) the recoupment or (3) the withholding of his Management Plan benefits either pursuant to the Plan's claims procedures, the Management Plan's claims procedures or pursuant to the Secretary of Labor's claims procedure regulations.  Plaintiff may deem the Plans' claims procedures to have been exhausted.  29 C.F.R. § 2560.503-1(*l*).

32.    Nonetheless, in an effort to resolve this dispute informally, after requesting certain documents from Feldman, Plaintiff, through counsel, by letter dated September 3, 2004, sought restoration of Plaintiff's full benefits as well as a refund with interest of all monies impermissibly withheld.

33.    By letter dated September 23, 2004, Feldman stated that he was treating the September 3, 2004 letter as a "claim" for "additional benefits" under both Plans and that a response would be forthcoming within the 90 days allowed by the Plans' claims procedures.  By letter dated December 9, 2004, Feldman denied the claim.

34.     Plaintiff timely appealed the denial to the Committee by letter dated February 2, 2005.  The Committee denied the appeal by letter dated April 7, 2005.

## V.     CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) -
### Benefits under the terms of the Plan)

35.     Plaintiff repeats and realleges the matter set forth in ¶¶ 1-34 above as if fully set forth herein.

36.     Pursuant to Plan § 4.08, pension benefits are payable monthly.

37.     Nothing in the Plan authorizes withholding monthly pension benefits in the event of a prior overpayment.

38.     As such, Plaintiff is entitled to his full monthly benefits both retroactively and prospectively.

### SECOND CLAIM FOR RELIEF
### (ERISA § 502(a)(3), 29 U.S.C. § 1132 (a)(3);
### Violations of ERISA and the terms of the Plan)

39.     Plaintiff repeats and realleges the matter set forth in ¶¶ 1-38 above as if fully set forth herein.

40.     The failure to pay Plaintiff his full monthly benefits each and every month is a violation of the terms of the Plan.

41.     Plaintiff is entitled to equitable restitution equal to the benefits withheld.

### THIRD CLAIM FOR RELIEF
### (ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3);
### Violations of ERISA and the terms of the Plan)

42.     Plaintiff repeats and realleges the matter set forth in ¶¶ 1-41 above as if fully set forth herein.

7

43.     Pursuant to ERISA § 206(d)(1), 29 U.S.C. § 1056(d)(1), "each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

44.     Plan § 7.02 provides that "…alienation of pensions…will not be permitted or recognized."  No exception is set forth for recoupment of overpayments.

45.     As such, the failure to pay Plaintiff his full monthly benefits each and every month is a violation of both the terms of the Plan and a violation of ERISA.

### FOURTH CLAIM FOR RELIEF
### (ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3); Interest on withheld benefits from the Plan)

46.     Plaintiff repeats and realleges the matter set forth in ¶¶ 1-45 as if fully set forth herein.

47.     Plaintiff is entitled to appropriate interest on all benefits withheld by the Plan.

### FIFTH CLAIM FOR RELIEF
### (ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3); Violations of ERISA and the terms of the Plan)

48.     Plaintiff repeats and realleges the matter set forth in ¶¶ 1-47 as if fully set forth herein.

49.     26 C.F.R. § 1.401(a)-13(c)(2) states that the terms "assignment " and "alienation" do not include "(iii) Any arrangement for recovery by the plan of overpayments of benefits previously made to a participant."  (The "Regulation.")

50.     To the extent defendants have relied on the Regulation to recover overpayments from Plaintiff, such reliance is in error.

51.     The unilateral imposition of recoupment is not an "arrangement for recovery of overpayments" within the meaning of the Regulation.

8

**SIXTH CLAIM FOR RELIEF**
**(ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3);**
**Violations of ERISA and the terms of the Plan)**

52.      Plaintiff repeats and realleges the matter set forth in ¶¶ 1-51 as if fully set forth herein.

53.      In the event that the recoupment of the overpayment to Plaintiff is an "arrangement for recovery of overpayments" within the meaning of the Regulation, the Regulation is *ultra vires*.

**SEVENTH CLAIM FOR RELIEF**
**(ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3);**
**Violations of ERISA and the terms of the Management Plan)**

54.      Plaintiff repeats and realleges the matter set forth in ¶¶ 1-53 as if fully set forth herein.

55.      The Plan and the Management Plan are separate entities.

56.      The withholding of Plaintiff's benefits from the Management Plan because of the overpayment by the Plan is not authorized by the Plan, the Management Plan or ERISA.

57.      Plaintiff is entitled to appropriate interest for the time his Management Plan benefit payments were impermissibly withheld.

**EIGHTH CLAIM FOR RELIEF**
**(ERISA §§ 502(a)(1)(B) and (a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3);**
**Violations of ERISA and the terms of the Management Plan)**

58.      Plaintiff repeats and realleges the matter set forth in ¶¶ 1-57 as if fully set forth herein.

59.      Even if recoupment of the overpayment is allowed, Plaintiff was not provided with adequate information to determine how recoupment should be effected or the opportunity to contest the proposed methods of recoupment.

9

## NINTH CLAIM FOR RELIEF (ON BEHALF OF THE PLAN)
### (ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D);
### Breach of fiduciary duty)

60.     Plaintiff repeats and realleges the matter set forth in ¶¶ 1-59 as if fully set forth herein.

61.     Pursuant to ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), AT&T, the Committee and Feldman (the "Fiduciary Defendants"), as fiduciaries, were required to "discharge [their] duties with respect to [the Plan] solely in the interest of the participants and beneficiaries and --":

> (A)     for the exclusive purpose of:
>
> > (i)     providing benefits to participants and their beneficiaries; and
> >
> > (ii)     defraying reasonable expenses of administering then plan;
> >
> > . . .
>
> (D)     in accordance with the documents and instruments governing the plan[.]

62.     The Fiduciary Defendants breached their duties by paying Plaintiff benefits in excess of those permitted by the Plan.

63.     Because the Plan is barred from recouping those overpayments from Plaintiff, the Plan has been damaged in the amount of the overpayments plus lost earnings thereon.

## VI.     PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Court enter judgment as follows:

1.     Reinstating his full pension benefits;

2.     Ordering defendants to pay him all previously withheld pension benefits with appropriate interest;

3.      Ordering defendants to pay him appropriate interest for the time his Management

Plan benefits were impermissibly withheld;

4.      Ordering the Fiduciary Defendants to make the Plan whole for all overpayments

made to Plaintiff together with all earnings lost thereon;

5.      In the alternative, requiring the Plan to provide an alternate method of

recoupment;

6.      Awarding Plaintiff his costs and attorney's fees herein; and,

7.      Awarding Plaintiff such other and further relief as to this Court may seem just and

proper.

Dated:      New York NY                      Respectfully submitted,
            January 24, 2007                 Rosen Preminger & Bloom LLP
                                                Attorneys for Plaintiff


                                    By: _/s/  David S. Preminger_
                                        David S. Preminger (DP 1057)
                                        708 Third Avenue, Suite 1600
                                        New York, New York 10017
                                        (212) 682-1900